**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GENA GREEN, TIMOTHY GREEN, and RICHARD DICKMAN;<br><br>Plaintiffs,<br><br>v.<br><br>ALLEGHENY COUNTY CYF, CAITLIN MILLER, MALLORY CONTI, JONAH FISH-GERTZ, and WILLIAM AINSWORTH,<br><br>Defendants. | ) | Civil Action No. 26-123 |

**MEMORANDUM AND ORDER OF COURT**

Presently before the Court is a Motion for Emergency Preliminary Injunction filed in the above-captioned matter pursuant to Rule 65 of the Federal Rules of Civil Procedure by pro se Plaintiffs Gena Green ("Ms. Green"), Timothy Green ("Mr. Green"), and Richard Dickman ("Mr. Dickman") (collectively, "Plaintiffs").[1] (Docket No. 17). In the motion, Plaintiffs ask the Court to order the following preliminary injunctive relief: (1) "For Allegheny County CYF to cooperate with the request of the plaintiff and complete a change of venue for the ChildLine investigation and to issue a not contact order to CYF regarding the plaintiffs and child for the duration of the case"; and (2) "Change of Venue for M.G. delinquency proceeding and Juvenile Probation Office Management of his case. For Allegheny County to Cooperate with the JPO or DA to change this." (*Id.* at 2). For various reasons, there has been some delay and confusion in the prosecution of this

[1] The Court notes that the motion's cover sheet indicates that it is "Filed on Behalf of" pro se Plaintiffs Ms. Green, Mr. Green, and Mr. Dickman, but the body of the motion refers only to Ms. Green, "Plaintiff" or "Petitioner," and the motion is signed only by Ms. Green (who is not an attorney and cannot represent the other pro se plaintiffs), while the signatures of Mr. Green and Mr. Dickman consist of their typed names with an "/s/." (Docket No. 17). It is therefore unclear whether the motion was intended to be filed by all three pro se Plaintiffs, or by Ms. Green alone. For purposes of ruling on the motion, however, the Court will refer to it as having been filed by all three pro se Plaintiffs.

case, as is reflected more fully on the Docket, and none of the Defendants have filed responses to the motion.[2] For the reasons set forth herein, the motion will be denied.

## I. STANDARD OF REVIEW

Preliminary injunctions are appropriate in "extraordinary" situations. *Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 200 (3d Cir. 2024), *cert. denied sub nom. Gray v. Jennings*, 145 S. Ct. 1049, 220 L. Ed. 2d 380 (2025) ("For all these reasons, a preliminary injunction 'is an extraordinary remedy[] [that] should be granted only in limited circumstances.'" (quoting *Mallet & Co. v. Lacayo*, 16 F.4th 364, 391 (3d Cir. 2021))). Four factors are relevant to the Court's decision to grant or deny a motion for preliminary injunctive relief: "'(1) the likelihood that the moving party will succeed on the merits; (2) the extent to which the moving party will suffer irreparable harm without injunctive relief; (3) the extent to which the nonmoving party will suffer irreparable harm if the injunction is issued; and (4) the public interest.'" *McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d 350, 356-57 (3d Cir. 2007) (quoting *Shire U.S. Inc. v. Barr Labs. Inc.*, 329 F.3d 348, 352 (3d Cir. 2003)). "The first two factors are the 'most critical.'" *Boynes v. Limetree Bay Ventures LLC*, 110 F.4th 604, 609 (3d Cir. 2024) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). Unless the first two factors are present, an injunction shall not issue. *See id.*; *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484 (3d Cir. 2000) ("A court may not grant this kind of injunctive relief without satisfying these requirements, regardless of what the equities seem to require.").

---

[2] For instance, aside from the motion not being signed by all three pro se Plaintiffs, there have been issues with service, Plaintiffs have filed a number of amended complaints, and the parties are currently in the process of briefing Defendants' motions to dismiss (in which respect, Plaintiffs have filed a number of motions for extension and for leave to file excess pages).

## II. DISCUSSION

This matter commenced on January 28, 2026, when Plaintiffs filed a motion to proceed *in forma pauperis* (Docket No. 1), lodging their attached Complaint.[3] The Complaint (Docket No. 13) was filed on the docket on February 17, 2026, and the next day Plaintiffs filed a Motion to File a Supplemental Pleading (Docket No. 14). Two days later, on February 20, 2026, Plaintiffs filed an Amended Complaint (Docket Nos. 16, 30) and their Motion for Emergency Preliminary Injunction (Docket No. 17). As noted previously, issues regarding Plaintiffs' signatures and service of process ensued, Plaintiffs sought to amend their complaint twice more (Docket Nos. 22, 31), motions to dismiss and motions to strike were filed, and Plaintiffs sought again to file an amended complaint, which the Court permitted. On June 11, 2026, Plaintiffs filed their Third Amended Complaint ("TAC") (Docket No. 52), alleging claims against Defendants Allegheny County Office of Children, Youth and Families ("Allegheny County CYF"), Allegheny County CYF employees Mallory Conti, Caitlin Miller, and William Ainsworth, and M.G.'s Guardian ad Litem Jonah Fish-Gertz.

According to the allegations in the TAC, this case appears to arise largely from the removal of the Greens' child, M.G., from the Green family home in 2024. (Docket No. 52, ¶ 37). Based on Plaintiffs' averments, it appears that Ms. Green is M.G.'s biological mother, Mr. Green is M.G.'s biological father, and Mr. Dickman has maintained an *in loco parentis* relationship with M.G. since 2013. (*Id.* ¶¶ 10, 11). On January 2, 2024, M.G. allegedly "suffered an aggressive behavioral episode . . . demonstrating unsafe behaviors including physical aggression . . . ." (*Id.* ¶ 92). Plaintiffs "contacted law enforcement to safely transport M.G. via ambulance to Western Psych . . . ." (*Id.* ¶ 93). Other incidents and events followed, including M.G.'s admission to a

---

[3] While this case is assigned to this judicial officer, it is referred to Magistrate Judge Maureen P. Kelly.

long-term Residential Treatment Facility for one and a half years. (*Id.* ¶¶ 285, 286). Notably, in January 2026, M.G. had a violent outburst that resulted in property damage and injury to Mr. Dickman. (*Id.* ¶ 289-94). Following the January 2026 incident, a "ChildLine"[4] report was made and was forwarded to Defendant Allegheny County CYF, a new CYF case and investigation was opened, and Ms. Green claimed that Allegheny County CYF had a conflict of interest. (*Id.* ¶¶ 302, 304). M.G. was also subjected to criminal charges for simple assault and harassment. (*Id.* ¶ 299).

Among other things, Plaintiffs aver in the TAC that Defendants carried out a "systemic, continuing pattern of misconduct, deliberate indifference, and failure to train." (Docket No. 52, ¶ 4). More specifically, Plaintiffs allege that Defendants implemented and maintained inappropriate supervisory training and policies, violated state and federal laws, falsified documents, and failed to conduct proper investigations or make timely contact with Plaintiffs. (*Id.* ¶ 6). Plaintiffs also allege that because – due to the removal and directives from the County – they are unable to "tether" M.G. (which they had previously done as part of a safety plan in order to restrain him), subsequent incidents involving M.G.'s conduct are a "state created danger." (*Id.* ¶¶ 84, 275-79).

The TAC – a sprawling, 96-page, 363-paragraph document with 64 pages of attached exhibits – alleges ten Counts against Defendants, in various combinations, under 42 U.S.C. § 1983: (I) Procedural Due Process – Fourteenth Amendment; (II) Substantive Due Process – Fourteenth Amendment; (III) Access to the Courts/Retaliation – First Amendment; (IV) Unconstitutional Custom, Policy, or Practice – *Monell*; (V) Failure to Train, Supervise, Discipline, or Adopt Necessary Policies – *Monell*; (VI) Conspiracy to Interfere with Civil Rights; (VII) Unreasonable

[4] Defendants explain that ChildLine is part of a mandated statewide child protective services program designed to accept child abuse referrals and general child well-being concerns, and that mandatory reporters can submit reports online in addition to the telephone hotlines that are otherwise available. (Docket No. 56 at 4 n.4).

Manner of Execution/Excessive Show of Force and Judicial Deception – Fourth Amendment; (VIII) Procedural Due Process – Fourteenth Amendment; (IX) Action that was Arbitrary, Capricious, and not in Accordance with the Law – 5 U.S.C. § 706; and (X) Substantive Due Process Right to Familial Integrity – Fourteenth Amendment. (Docket No. 52 at 79-95). Plaintiffs seek damages for emotional distress on behalf of M.G. and Ms. Green, reputational damages, damages for financial loss and loss of familial association, and punitive damages. (*Id.* ¶¶ 317-21).

Defendants have filed motions to dismiss the TAC (Docket Nos. 55, 60), which are presently being briefed by the parties. No response has been filed to the motion for preliminary injunction, nor have Plaintiffs sought resolution of the motion in the course of the various other events that have occurred since this case was initiated.

In their motion for preliminary injunction (the substance of which, the Court notes, is not entirely clear), Plaintiffs appear to request the following: that the Court prohibit employees of Allegheny County CYF from having contact with "the family," outside of court proceedings, until the state court appeal[5] and the present lawsuit is concluded, arguing that Allegheny County CYF has a conflict of interest and "the only solution" is for it to set up an interagency transfer of the case to Beaver County; and, largely restating the first request, that the Court move M.G.'s delinquency hearing and Juvenile Probation Office management of his case from Allegheny County to Beaver County. (Docket No. 17 at 7-8, 11). As the delinquency hearing date indicated in the motion (March 5, 2026) has already passed, the Court notes that this particular request is moot. Therefore, upon review of Plaintiffs' motion in its entirety, Plaintiffs' remaining request appears to be that the investigation and delinquency case (related to the January 2026 incident) be

[5] Plaintiffs indicate that they are appealing the state court dependency proceeding. (Docket No. 17-1 at 7).

transferred from Allegheny County to Beaver County, in which case Allegheny County CYF personnel would not contact the family outside of court proceedings.

In addressing the factors relevant to the Court's determination of whether it is appropriate to order the requested preliminary injunctive relief, Plaintiffs argue that: (1) they are likely to succeed on the merits of their claims because such claims are not frivolous, "[a] lot of these claims are actually backed by the record," and the "ones that are not the plaintiff has fifty valid exhibits that will back up her claims" (Docket No. 17 at 3-4); (2) Plaintiffs will suffer irreparable harm absent a preliminary injunction because Allegheny County CYF cannot impartially hear this case and handle this investigation (*id.* at 4-5); (3) Allegheny County CYF will not be harmed since it will just need to hand over its files, although Beaver County CYS will bear some hardship as it will be given another county's case to handle (*id.* at 5); and (4) relief is in the public interest because moving the investigation and delinquency case to another county due to a conflict of interest preserves "the integrity of the judicial system, guaranteeing the constitutional right to a fair trial and ensuring that public trust in the law is not eroded by perceived or actual bias" (*id.* at 5-6).

For now, the Court will assume without deciding that Plaintiffs have demonstrated a likelihood of success on the merits of at least some of their claims, in satisfaction of the first preliminary injunction factor. Therefore, the Court must next consider whether Plaintiffs have shown that they will suffer irreparable harm without the requested preliminary injunctive relief. Plaintiffs seeking preliminary injunctive relief "ha[ve] the burden of proving a 'clear showing of immediate irreparable injury.'" *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987) (quoting *Continental Group, Inc. v. Amoco Chemicals Corp.*, 614 F.2d 351, 359 (3d Cir. 1980)). However, an important distinction to bear in mind is that an immediate, irreparable injury is not

the same as a "serious or substantial" injury; rather, for an injury to be irreparable, it "'must be of a peculiar nature, so that compensation in money cannot atone for it.'" *Id.* (quoting *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)); *see also Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."). If a loss may be addressed by money damages, such loss is not the type to justify the issuance of injunctive relief. *See ECRI*, 809 F.2d at 226 (citing *In re Arthur Treacher's Franchisee Litigation*, 689 F.2d 1137, 1145 (3d Cir. 1982)); *Adams*, 204 F.3d at 484-85 ("The irreparable harm requirement is met if a plaintiff demonstrates a significant risk that he or she will experience harm that cannot adequately be compensated after the fact by monetary damages.").

Here, the Court has reviewed the record to determine whether Plaintiffs have shown that they will suffer irreparable harm if the Court does not issue a preliminary injunction. In support of their motion, Plaintiffs attach, first, a Change of Venue Request directed to Pennsylvania's Department of Human Services, Children, Youth and Families Services, regarding what appears to be the January 2026 case. (Docket No. 17-1). Such request includes an identification of cases brought by "the family" that are pending against Allegheny County CYF, which, according to Plaintiffs, shows that a conflict of interest exists such that Allegheny County CYF and its employees will not be impartial in handling the new January 2026 case. (*Id.*). Second, Plaintiffs attach a letter from Ms. Green, addressed to "All," that includes a demand to move the new investigation to a different county, and indicating that such investigation by Allegheny County

CYF creates a significant conflict of interest.[6] (Docket No. 17-2). Plaintiffs also attach email correspondence noting a prior request that Allegheny County CYF cooperate in transferring a case (presumably regarding the January 2026 ChildLine report) to Beaver County, and again asserting that a conflict of interest exists. (Docket No. 17-3). Last, Plaintiffs attach copies of several texts that ask for supervisor information, and include comments regarding whether a present matter (presumably the January 2026 investigation) is separate and distinct from a previous investigation. (Docket No. 17-4).

Having considered the arguments and evidence submitted by Plaintiffs regarding irreparable harm, the Court finds Plaintiffs' showing that they are likely to suffer irreparable harm to be inadequate. More specifically, the evidence that Plaintiffs have submitted does not show that their alleged harm is imminent and that, if such harm should occur, they cannot be compensated by money damages. First, Plaintiffs fail to show that an immediate injury will likely arise from the January 2026 investigation being handled by Allegheny County CYF. Plaintiffs assert, but have not provided any evidence indicating, that the Agency is not being objective, or will not be objective, in handling the January 2026 investigation and delinquency case. Plaintiffs have simply attached documents in which they assert that Allegheny County CYF has a conflict of interest regarding the January 2026 investigation, will not be impartial, and must agree to transfer the case to another county. Accordingly, the Court concludes that Plaintiffs have failed to demonstrate that immediate irreparable harm is likely, given that the harm with respect to Allegheny County CYF's supposed failure to be objective due to Plaintiffs' lawsuits against it is entirely speculative. Although Plaintiffs argue that Allegheny County CYF has a conflict of interest as to the January

---

[6] For example, Ms. Green argues, somewhat confusingly, in such letter that it is in Allegheny County CYF's best interest to prove in the federal lawsuit that disallowing the tether was correct, but that admitting that the lack of the tether caused an assault would invalidate Allegheny County CYF's legal defense. (Docket No. 17-2 at 2).

2026 case because Plaintiffs presently have other litigation pending against the agency, the Court finds that the mere existence of such pending litigation is insufficient to show that the agency cannot be objective in the new case. Moreover, Plaintiffs, who have not addressed the issue of monetary compensation in their motion, have also not established that their alleged harm – should it occur – could not be compensated by monetary damages, nor is it otherwise evident to the Court why this would not be so.[7]

Accordingly, as Plaintiffs have failed to meet their burden of showing that irreparable injury is likely in the absence of the requested injunctive relief, Plaintiffs' motion for preliminary injunction will be denied for lack of immediate irreparable harm. In light of such finding, it is not necessary for the Court to address the last two preliminary injunction factors.

## III. CONCLUSION

For all these reasons, the Court will deny Plaintiff's motion seeking a preliminary injunction in this matter.

Accordingly, the Court enters the following Order:

---

[7] Additionally, to the extent Plaintiffs allege a violation of the First Amendment, "[w]hile other circuits relax the irreparable harm requirement in First Amendment cases, [the Third Circuit] requires a First Amendment plaintiff seeking a preliminary injunction to prove irreparable harm." *Conchatta, Inc. v. Evanko*, 83 F. App'x 437, 442 (3d Cir. 2003). Thus, to the extent Plaintiffs are alleging a First Amendment violation, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," but "[c]onstitutional harm is not necessarily synonymous with the irreparable harm necessary for issuance of a preliminary injunction" and "the assertion of First Amendment rights does not automatically require a finding of irreparable injury, thus entitling a plaintiff to a preliminary injunction if he shows a likelihood of success on the merits." *Hohe v. Casey*, 868 F.2d 69, 72-73 (3d Cir.1989) (internal quotation marks and citations omitted). "Rather the plaintiffs must show a chilling effect on free expression." *Id.* at 73 (internal quotation marks and citation omitted). Plaintiffs have not done so here.

**ORDER**

AND NOW, this 21st day of September, 2026, IT IS HEREBY ORDERED that Plaintiffs' Motion for Emergency Preliminary Injunction (Docket No. 17) is DENIED.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

cc/ecf: Gena Greene (via U.S. Mail)
Timothy Greene (via U.S. Mail)
Richard Dickman (via U.S. Mail)
All counsel of record